Drury & Wife *vs.* Briscoe and Randall, Trustees.

(Decided 12th March, 1875.)

JOHN H. DRURY OF H. and MARY R. DRURY, his Wife *vs.* JAMES T. BRISCOE and J. WIRT RANDALL, Trustees.

*Husband and Wife—Choses in action—Liability of the Estate of a Husband for a debt contracted by him in favor of his Wife, as against the claims of Subsequent Creditors—Effect of taking a second Mortgage to secure a Debt,—the first Mortgage for the same debt not being released,—as against intervening liens.*

A married woman being entitled to a distributive share of the proceeds of the real estate of her father, sold under proceedings for a partition, sold her share with the consent of her husband, and took the note of the purchaser for the purchase money. This note the husband collected as a loan by his wife to him upon an agreement with her, to repay it to her with interest, and gave her his note for the amount due her. Afterwards the husband becoming embarrassed, in order to protect his wife's claim paid two judg-

ments against himself and caused them to be entered to her use. The validity of this transaction being impeached by subsequent creditors of the husband as in fraud of them, it was HELD:

1st. That the husband did not reduce the *chose in action* of his wife into his possession by virtue of his marital rights, but in pursuance of his agreement with his wife obtained control of the note; and his agreement to repay her the amount he collected on it was founded upon an adequate consideration.

2nd. That the claim of the wife, was manifestly just and should be allowed.

Where a mortgage was given to a guardian to secure a debt due his wards, and subsequently a new guardian was appointed in his place, who in ignorance of the existence of subsequent incumbrances upon the property, agreed that the time of payment of the mortgage debt should be extended, and took a new mortgage on the same property to secure its payment but without releasing the first mortgage, it was HELD:

That the debt secured by the two mortgages was the same and should have the benefit of the lien of the first mortgage.

APPEAL from the Circuit Court for Anne Arundel County, in Equity.

The questions in this case arise upon exceptions to the auditor's report distributing the proceeds of the sale of the real and personal estate of John H. Drury, of H., sold by trustees to whom he had conveyed it, for the benefit of his creditors. One of the claims, the rejection of which is excepted to by the appellants, is that of Mary R. Drury, the wife of said John H. Drury, of H., upon two judgments against him entered to her use. The facts in relation to this claim are set forth in her answer, as follows:

"This respondent respectfully showeth, that she is the equitable holder of the two judgments set forth in the annexed short copies herewith filed, marked 'M. R. D., Exhibit A.' That the consideration of said assignment to her was legal and valuable, and arose out of the fact, that in the year 1851, your respondent became and was entitled to receive from the executors of her deceased father, or the trustee who sold the real estate for partition among the

Drury & Wife *vs.* Briscoe and Randall, Trustees.

devisees of her said father, the sum of eight hundred and fifty dollars, out of which she was entitled to an equitable provision, and in consideration thereof, her husband, John H. Drury, of H., agreed with her, that if she would consent to his receiving said money, without interposing her claim thereto, he would receive said sum of money as a loan by her to him, and would repay it with legal interest from the time of such receipt, whenever the same should be demanded of him. That thereupon the said John H. Drury received the said sum of money, not in virtue of his marital rights, but as a loan made by this respondent to him.

"Your respondent further showeth, that no interest having ever been paid on the loan, and no part of the principal having been paid, there remained due to her, on the 18th of October, 1855, the whole of said debt, with interest thereon.

"This respondent further showeth, that since her said marriage, she was also enabled, by her personal skill and labor, in raising and selling poultry, butter, pork, &c., to realize a large sum of money for her sole and separate use, which she had loaned to her husband, which, on the 18th October, 1855, amounted, with the debt and interest first aforesaid, to the aggregate sum of $1475 ; for which said several amounts said husband, upon a full settlement of accounts with her, duly passed his note to her, (witnessed and stamped, as will be seen by inspection thereof,) and which is herewith filed.

"This respondent further showeth, that in the year 1869, her said husband having become unfortunate in business, and embarrassed, he was anxious to pay his debt to her, and with that view he did, by her authority and with her privity, appropriate money in his hands to the purpose of procuring the assignments to be made to her, as set forth in Exhibit A, as aforesaid; which assignments she holds as security for said debts so due by her husband, and represented in said note."

Drury & Wife vs. Briscoe and Randall, Trustees.

Another claim in question was that of Joseph C. Collinson and Stephen Beard, under two mortgages, in regard to which they make the following statement in their answer :

"As to the two mortages mentioned in the said bill, these defendants answering say, that the said Joseph C. Collinson was the guardian of Joseph Collinson and David Collinson, infant children of John Collinson, deceased, and as such, invested part of the estate of said wards, to wit: the sum of three thousand five hundred dollars, in a mortgage on the land of the said John H. Drury, in which, his said wife joined, the said mortgage being dated the 20th day of May, 1863; that afterwards, the said Stephen Beard was appointed guardian to the said minors in the place of the said Joseph, and being willing that the said money should remain thus invested, it was agreed by and between the said Joseph and Stephen, and the said John H. Drury, that the credit on said debt should be extended, and that Drury and his wife would give another mortgage for the same land to the said Stephen, and that the first mortgage should be released by the said Joseph.

"The defendants aver, that at that time they were not aware that there were any liens on the said land, and relying on the assurance of said Drury that there were none, they did not examine the records, and agreed that such mortgage should be executed, which was done on the twentieth day of May, 1869, but they soon after discovered that there were judgments to a large amount binding the said land, and the said Joseph C. Collinson refused to execute a release of the mortgage to him, and they have ever since considered the first mortgage as a lien on the land, and they now claim that it should be paid in priority to all other liens of a subsequent date.

"And if this Honorable Court should be of opinion that under the circumstances, the said first mortgage is discharged as a lien, as of the time of its being recorded, they claim and rely on the mortgage to said Beard, as a valid

Drury & Wife *vs.* Briscoe and Randall, Trustees.

lien on the said land, insisting, however, that the lien reaches back, under the mortgage, to Collinson, and that the one to Beard is only a security for the same debt, in which view of the question, they signed agreement, marked '7,' to come in under the deed."

The other facts are sufficiently stated in the opinion of this Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON, ALVEY and ROBINSON, J.

*A. B. Hagner* and *A. Randall* for the appellants.

The agreement made between John H. Drury and wife, the appellants, and William Jones, for the sale of the wife's real estate, for which Jones delivered to the wife his note, payable to her for her use, was a *bona fide* and legal agreement, being for a valuable consideration—the wife's title and interest in her own real estate—which a Court of Equity will enforce in favor of the wife.   *State, use of Stevenson, vs. Reigart,* 1 *Gill,* 25 *and* 26 ; *Stockett vs. Holliday,* 9 *Md.,* 489 ; *Kuhn vs. Stanfield,* 28 *Md.,* 215 ; *Duvall vs. Farmers' Bank,* 4 *G. & J.,* 282 ; *Mayfield vs. Kilgour,* 31 *Md.,* 240.

While the original title and interest of the wife in her own real estate remained in her, subject only to this agreement of sale to Jones, proceedings were instituted *by her and her co-heirs* to sell this, their real estate, and the same was sold to Jones, and the wife's share of the proceeds of sale made payable to Jones, as the assignee thereof, under the agreement between him and John H. Drury and wife, but before such assignment of the proceeds of the wife's estate to Jones, and before any payment thereof, and whilst the wife had a right to proceed in equity, and have the wife's equity in these proceeds of sale paid to her, her husband, Drury, agreed, that if she would allow him to collect this note to her, and receive these proceeds of sale, he would take this money as a loan to him from her, and

Drury & Wife *vs.* Briscoe and Randall, Trustees.

pay or secure the same to her on demand, with interest; which agreement was entered into, and the money paid accordingly. These facts constitute a valid and *bona fide* agreement in the wife's favor, obligatory on the husband and all claiming under him. *Jones vs. Jones,* 18 *Md.,* 465; *Norris vs. Lantz,* 18 *Md.,* 260; *McNamee vs. Withers,* 37 *Md.,* 180.

*Frank. H. Stockett* and *Wm. H. Tuck,* for the appellees.

The decision of the Court below allowed to Mrs. Mary R. Drury more than she was entitled to claim out of these trust funds, but inasmuch as the appellees did not appeal from this decision, such opinion cannot now be modified or reversed by this Court, so as to exclude her claim entirely.

The testimony shows that there was no consideration for the said pretended debt of Drury to his wife.

The appellees will rely on the following cases in support of their exceptions.

As to the husband's right to the *choses in action* of the wife. *Wiles vs. Wiles,* 3 *Md.,* 1; *State vs. Krebs,* 6 *H. & J.,* 31; *Newcomer vs. Orem,* 2 *Md.,* 297; *Peacock vs. Pembroke,* 4 *Md.,* 280; *Turton vs. Turton,* 6 *Md.,* 375; *Stockett vs. Holliday,* 9 *Md.,* 480; *Taggart vs. Boldin,* 10 *Md.,* 104; *Stockett vs. Bird,* 18 *Md.,* 484; *Duvall vs. Farmers' Bk.,* 4 *G. & J.,* 282.

How a wife may become the creditor of the husband. *Bowie vs. Stonestreet,* 6 *Md.,* 430; *Jones vs. Jones,* 18 *Md.,* 464; *Mayfield vs. Kilgour,* 31 *Md.,* 240; *Kuhn vs. Stansfield,* 28 *Md.,* 210; *Stevenson vs. Reigart,* 1 *Gill,* 1; *Unger vs. Price,* 9 *Md.,* 558.

*Wm. H. Tuck,* for Collinson and Beard.

As the first mortgage was not released it stands as a security for the debt. Under the agreement of the parties, the second mortgage could not stand as security for the debt before the first was released. When it was discovered

Drury & Wife *vs.* Briscoe and Randall, Trustees.

that Drury had deceived Collinson and Beard, the former was not bound to release his mortgage, so as to let in the intervening judgments.    These judgment creditors ought not to complain of this, because they did not credit in ignorance of the prior lien.    If Drury were now insisting that Collinson should release his mortgage, he would not be listened to, on account of his deception.    His creditors ought not to be in a better position, and derive benefit by his fraud.

If the first mortgage had been released, the case might stand on a different principle.

But for the answers of these parties, it would not appear but that the two claims were different debts, when the answer is resorted to by the judgment creditors for the purpose of defeating the claim under the first mortgage, because another security was taken, they make the answers evidence, and are bound by the averment as to the manner in which the credit on the debt was to be extended, and by the averment of the deception that was practiced by Drury. It is not like the case of *Woollen vs. Hillen,* 9 *Gill,* 185, where a release had been executed, reciting that the debt had been paid.    But the Court intimate that if there had been fraud, the result might be different.

STEWART, J., delivered the opinion of the Court.

Exceptions were filed in the Circuit Court for Anne Arundel County, in the distribution of the proceeds of sale of the property of John H. Drury, amongst his creditors, to the allowance of claims of Mary R. Drury, his wife, consisting of two judgments, standing for her use, designated in the auditor's report as Nos. 3 and 6.

The exceptions were sustained, and the claims in part rejected, by the order of the Court of the 7th May, 1873, from which the appeal has been taken.

The claim of Mrs. Drury, originally consisted of two parts, which were consolidated in the obligation given to

Drury & Wife *vs.* Briscoe and Randall, Trustees.

her by Mr. Drury, in October, 1855, which was afterwards substituted by the two judgments against him, now standing to her use.

The origin of her equitable claim against her husband was long anterior to the claims of the present creditors of Drury, and there is no question as to the perfect sincerity and *bona fides* of the transaction between the husband and wife.

The present contention is over that part of her claim, resulting from a note given to Mrs. Drury, by her brother, Mr. Jones, for $850, on account of his purchase of her undivided interest, in the proceeds of the real estate of her father, which had been sold under decree, for partition in 1851, and which were in Court undistributed.

The circumstances as detailed by the proof are sufficient to show, that Mrs. Drury, being thus entitled to a portion of the proceeds of the sale, then in Court for distribution, without a formal order of the Court, as to the distribution of her part, Mr. Drury the husband agreed that her interest in the fund, should be assigned to her brother, and his note for $850 taken therefor, should be given to Mrs. Drury, as her separate property.

This is the equitable foundation of Mrs. Drury's claim, which both husband and wife have always treated as belonging to the wife.

Upon the basis of which Drury, the husband, made the promise to his wife, and upon the faith of which she gave up the note to him.

Mrs. Drury had held the custody of the note, as her own separate property, when her husband agreed that if she would permit him to collect it, he would repay it to her whenever demanded.

In pursuance of this understanding, and performance of the agreement on his part, he gave the obligation, in good faith, for its payment, thus ratifying and confirming his original agreement.

The husband acknowledging the separate interests of the wife, in prejudice of the rights of no other parties, would certainly violate a moral obligation if he failed to perform his agreement.

Unless in conflict with some controlling principle of justice and right, a Court of Equity must sustain the agreement.

The husband did not reduce the *chose in action* of his wife to his possession by virtue of his marital rights, but in pursuance of his agreement with his wife, obtained the control of the note.

To allow the husband to repudiate the debt when he found that he had the right to do so, because contracted with his wife, would give him license to disavow his obligations, founded upon adequate consideration.

The establishment of such a principle would be subversive of the moral obligations of good faith and honest dealing, governing the relation of husband and wife, which no Court of Equity can sanction.

The parties out of Court, of their own accord, have acted for themselves, upon equitable grounds; and that has been done, which the Court would have ordered, upon the application of husband and wife, before the distribution of her share of her father's estate.

There is, therefore, every reason why it should receive the sanction of the Court, after it has been done, and the claim of the wife, under such circumstances, be recognized and approved, as just and valid. *Stevenson vs. Reigart*, 1 *Gill.*, 27.

So far as a consideration was necessary to support the agreement, the origin of the claim, and the circumstances connected therewith afforded a sufficient foundation.

When the obligation is founded upon an equitable duty, that is a sufficient consideration to support the promise even in a Court of law.

If the husband was under a moral obligation, which no Court could enforce, and promised to pay the claim, the

Drury & Wife *vs.* Briscoe and Randall, Trustees.

honesty and rectitude of the thing is a sufficient consideration.

"The rule to constitute a valid consideration for a promise, there must be a benefit to the promisor, or loss to the promisee, is much too narrow." *Stevenson vs. Reigart,* 1 *Gill,* 26.

It is an established principle, that any consideration, however small, will be sufficient, as a Court of Equity is willing to lay hold of any just ground to support an agreement. *Hannan vs. Towers,* 3 *H. & J.,* 147.

The claim of Mrs. Drury, in this case, is manifestly just, and must be allowed.

It follows, there was error in the rejection of her claims to the property in question, standing to her use.

The case will be remanded that they may be allowed by the Circuit Court, subject, of course, to any just credits applicable thereto.

In relation to the claims of Joseph C. Collinson and Stephen Beard, Nos. 2 and 8, representing, it seems, the same debt, secured by two mortgages, there is some question as to its priority.

We think it is right that this debt should have the benefit of the lien of the first mortgage to Collinson.

From what occurred between the parties, at the time of the substitution of the second mortgage, there could have been no intention to waive or postpone the lien or security of the debt.

The mortgage was not actually released, and other creditors had notice.

In *Woollen vs. Hillen,* 4 *G.,* 185, the mortgage had been released, and a different question was involved. See *Brawner vs. Watkins,* 28 *Md.,* 226; *Walker vs. Stone,* 20 *Md.,* 195.

> *Order reversed, and*
> *cause remanded.*

(Decided 12th March, 1875.)