ALBAN C. THOMPSON, Tax Collector, *v.*
LOUISA P. HENDERSON.

[No. 29, April Term, 1928.]

*Decided June 20th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Walter C. Capper,* with whom were *Lloyd Lowndes* and *Paul L. Hitchins* on the brief, for the appellant.

*George Henderson,* for the appellee.

PARKE, J., delivered the opinion of the Court.

Taxes are not liens unless made so by statute (*Parlett v. Dugan,* 85 Md. 407); but, by section 56 of article 81 of the Code, all state, county and municipal taxes are created liens on the real estate of the party indebted from the time of the levy of the tax (*Union Trust Co. v. Belvedere,* 105 Md. 507, 525). Since there is no statutory provision to that effect, taxes are not a lien upon personal property until made so by a levy thereon (*Parlett v. Dugan,* 85 Md. 409); but, by force of express enactments, the exemptions of property allowed a debtor from execution or seizure in satisfaction of a debt or claim do not apply to any levy on property for nonpayment of taxes (section 12 of article 83 of the Code); and whenever personal property which has been assessed as the property of any individual in any county, city or elec-

tion district shall be removed before the tax levied thereon has been collected, the collector in whose hands the levy is may pursue said personal property and collect said tax in the same manner as if the property remained in his said county, city or district. Section 69 of article 81 of the Code. Collection of taxes is enforced by an action of assumpsit or debt and by way of distress or execution to be levied upon the real or personal property of the tax debtor; or, where the property is in the control or custody of equity, through application by the tax collector to that tribunal for payment. If the estate of the taxpayer is in the orphans' court for administration, all taxes due and in arrear, without being proved and passed, are preferred to the exclusion of all other debts. Sections 58, 59, 61-73 of article 81, and section 120 of article 93 of the Code; *Prince George's County v. Clark,* 36 Md. 219; *Appeal Tax Court v. West. Md. R. Co.,* 50 Md. 295; *Baltimore v. Howard,* 6 H. & J. 383; *Duvall v. Perkins,* 77 Md. 587; *American Coal Co. v. Allegany County,* 59 Md. 185; *Ex parte Tax Sale of Lot* 172, 42 Md. 196; *Meyer v. Steuart,* 48 Md. 423; *Margraff v. Cunningham,* 57 Md. 585; *Bonaparte v. State,* 63 Md. 470; *Blakistone v. State,* 117 Md. 237; *Rouse v. Archer,* 149 Md. 470. The collector can enforce the payment of all the taxes due upon any of the property of the tax delinquent. The fact that there is ample personal property out of which the tax might be made does not prevent a sale of the real estate for that purpose. Sections 58, 59, 60 of article 81 of the Code; *Dyer v. Boswell,* 39 Md. 469. And when a sale of land is made in accordance with the requirements of the statute, and a tax deed is given, "then from the time of its delivery it clothes the purchaser, not merely with the title of the person who had been assessed for the taxes and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and incumbrances of private persons, and all equities arising out of them." *Hefner v. North Western Ins. Co.,* 123 U. S. 751; *Textor v. Shipley,* 86 Md. 424, 438, 439; *McMahon v. Crean,* 109 Md. 552;

*Hill v. Williams,* 104 Md. 604; *Wagner v. Goodrich,* 148 Md. 318, 322, 323; *Winter v. O'Neill,* 155 Md. 624.

Prior to the Act of 1892, ch. 518, whenever a sale of either real or personal property was made by any ministerial officer under judicial process or otherwise, all sums due and in arrear for taxes from the party whose property was sold had to first be paid and satisfied by the party selling paying the taxes to the collecting officer. This statutory obligation applied to taxes on both real and personal property, and whether the taxes due and in arrear were upon the particular property sold or some other belonging to the taxpayer. Section 64 of article 81 of the Code of 1888. It was held in *Degner v. Baltimore,* 74 Md. 144, that this provision of the law was not a lien; but, in the language of the opinion, "Priority of payment is a preference in the appropriation of the proceeds of a debtor's property. As it puts the taxes ahead of other claims it is near of kin to a lien and may be called a *quasi* lien. This statute provides that in all cases where an officer of the law by judicial authority takes charge of the personal property of a debtor or person, and sells the same, all taxes due on the property shall be first paid by him. It in effect makes such judicial officer the collector of the taxes in that condition of things without the intervention of proceedings by distraint. This payment is to be made of such taxes irrespective of the question whether an actual lien has been acquired by distress or not."

It should be observed that for these taxes to be a preference they must be due and in arrear, which was fixed by statute as on and after the first day of January succeeding the date of the levy (Section 54 of article 81 of the Code; *Wheeler v. Addison,* 54 Md. 41, 47; *Bamberger v. Baltimore,* 125 Md. 431, 433-435; *Findlay v. Darnall,* 143 Md. 291, 294), and that, in addition to those made by other ministerial officers, a sale either by a trustee under deed or will or by decree of court or under a power of sale in a mortgage deed is one by a "ministerial officer under judicial process or otherwise" within the meaning of section 64 of article 81 of the Code of 1888. *Parlett v. Dugan,* 85 Md. 407, 413;

*Gould, Trustee, v. Baltimore,* 58 Md. 46; *Hebb v. Moore,* 66 Md. 167; *Fulton v. Nicholson,* 7 Md. 107; *Rouse v. Archer,* 149 Md. 470, 473. All of these actions, liens and priorities were subject, so far as the taxes levied for county or city purposes, to the statutory bar of limitations of four years from the date of their levy, and a possible extension for two more years in the event a trustee or receiver be appointed to complete the collection. Section 93 of article 81 of the Code; *Tuck v. Calvert,* 33 Md. 209, 224, 225; *Georgetown College v. Perkins,* 74 Md. 72, 74, 76; *Hebb v. Moore,* 66 Md. 167, 170; *Perkins v. Gaither,* 70 Md. 134; *Condon v. Maynard,* 71 Md. 601, 606; *Rouse v. Archer,* 149 Md. 473; *Casualty Insurance Co.'s Case,* 82 Md. 535, 565.

Through these liens, remedies, and priorities, the payment of taxes upon both realty and personalty was secured and enforced as a single claim, and without any distinction between the amount of taxes severally accruing due on the respective items of property assessed and together producing the sum total of the taxes payable by the owner. While the public benefited, hardship occasionally resulted to other claimants against the taxpayer or his property from the enforcement of the law. An illustration of this was afforded by *Degner v. Baltimore,* 74 Md. 144, where a portion of a stock of goods had been seized under an attachment proceedings, and sold by order of court, and the City of Baltimore intervened to claim payment of taxes out of the proceeds of sale, and the taxes due to State and city were directed to be paid in full out of this fund, the court holding it no defense to the full allowance of these taxes that they should be paid in whole or in proportionate part out of the proceeds of sale of the residue of said stock of goods taken under a subsequent attachment issued out of a different court in favor of other creditors. This decision was rendered in 1891, and by the Act of 1892, ch. 518, now section 74 of article 81 of the Code, the statute was amended so as to read: "Whenever a sale of either real or personal property upon which taxes are due and payable shall be made by any ministerial officer, under judicial process or otherwise, all sums due and in

arrears for taxes, upon such property, from the party whose property is sold shall be first paid and satisfied; and the officer or person selling shall pay the same to the collector of the county or city, if any, or to the treasurer if there be no collector."

The effect of this amendment was that the party selling as a ministerial officer was only required to pay all the taxes due and in arrear on the particular property sold, as was decided in *Parlett v. Dugan,* 85 Md. 407, 413 (1897), where this act was construed. The body of the law with respect to the collection of taxes was only altered to the extent indicated. As this amendment was primarily a change for the relief of those holding claims or liens against the tax debtor, and was a particular exception engrafted upon existing general methods of enforcing the payment of taxes, the effect of the statute should not be extended by construction beyond its fair intendment, or so as to prejudice in any unwarranted degree the enforcement, according to other subsisting and related legislation, of the obligation of every citizen to pay his taxes. All taxes levied continue to remain a lien upon all the real estate of the taxpayer, and this lien for all taxes is still enforceable by way of distress or execution upon any of the real or personal property of the tax debtor, and any such real or personal property so levied upon, when sold conformably with the provisions of law and conveyed, passes to the purchaser not merely the interest of the persons to whom the property had been assessed for the taxes on account of which it was sold but, freed and discharged of all prior liens, mortgages, and encumbrances, a new and complete title under an independent grant from the sovereign authority. And so, where the collector may not proceed by distress or execution because the property of the taxpayer is in the control or custody of the court, there, also, remains the duty of the collector to apply to the court in whose custody or control the property may be for the payment of all the taxes due. *Supra.* These general provisions of statute and these rules of law are not to be nullified by section 74, but to be enforced with it, as they are all in *pari*

*materia.* Nor is there any serious obstacle to a construction of the several but allied provisions of the sections that will produce their intended and consistent operation. Whenever a sale is made of either real or personal property by a ministerial officer, section 74 restricts, as against all but the taxpayer, the payment by that ministerial officer to only those taxes which are ascribable to the particular property being sold; but, if any residue of the proceeds remain for distribution to the taxpayer or his personal representatives, or among or for the benefit of his general unsecured creditors, then the amount of all taxes remaining due and in arrear should be charged against and be paid out of such residue of the proceeds of sale so distributable to the taxpayer or his personal representatives or for the use or benefit of his general unsecured creditors.

The postponement of the payment of taxes, due on account of the assessment on other property than that being sold, to the payment of lienors, whether their encumbrance be general or particular, is due to the consideration that if such lienor were enforcing his claim against the property by sale, it would be through a ministerial officer, and no other taxes would be primarily payable thereout except those upon the property the lienor was selling. As the lienor could not enforce the collection of a matured claim by a sale solely because, by a prior proceedings, control and custody of the property had been taken by the court, and the matter was there pending, and as he would have recourse, according to his priority, to the fund arising, it is a necessary consequence that the lienor is within the protection of section 74 and should not lose its benefits. The taxpayer himself and his general unsecured creditors are upon a different footing. The taxpayer is personally bound to pay all his taxes, which are a general lien on all his realty, and may be made a lien upon his personalty, and his personal representatives stand in his shoes; and general unsecured creditors must claim through the taxpayer, having no lien against either his real or personal estate. When due and in arrear it is common practice to allow all taxes, without reference to the particular

property upon which they are levied, against the general fund in hand for distribution among the general unsecured creditors of the taxpayer whose estate is in course of settlement.

The comparison of all the sections of the statutory law with one another reveals the undoubted purpose and meaning of the legislation, and the construction here adopted makes the law a consistent whole; and, except as necessarily modified by section 74, assures full effect to sections 56, 58, 59, 61-73 of article 81, and to the rule that the remedies of the tax collector by way of distress or execution are suspended against any property in the custody or control of the court, but that, in substitution for such remedies and to obtain a corresponding priority or precedence through an analogous allowance against the fund arising from the proceeds of the sale of the property, the tax collector is remitted to filing the tax bill in the court having assumed control and custody of the property. *Supra.* It is no answer to this construction that, through a transfer of title other than by a sale of a ministerial officer, the tax collector may sometimes fail to collect the taxes ascribable to personalty, since the State as well as the individual may lose a remedy through the neglect of its officer to resort to the remedy in time. See *State v. Williams,* 101 Md. 529. Taxes should be promptly collected and, if the collector fails to enforce their payment within the period allotted through a levy by way of distress or execution upon any of the real or personal property of the tax debtor, it is his own neglect if the taxes are thereby lost, and he and his bond are answerable therefor to the State for his default. Code, art. 81, secs. 52, 53, 54, 79, 80, 85, 89-91; art. 26,, sec. 40; *Crane v. State,* 1 Md. 27; *Wilson v. Ridgely,* 46 Md. 235; *Sprigg v. State,* 54 Md. 469; *Frownfelter v. State,* 66 Md. 80; *Charles County v. Fidelity & Deposit Co.,* 99 Md. 244.

The decisions in *Union Trust Company v. Belvedere Co.,* 105 Md. 507, and in *American Casualty Insurance Company's Case,* 82 Md. 535, have been cited by the appellant

in support of his theory that all taxes arising from assessments upon both real and personal property of the taxpayer are liens and, when due and in arrear at the time of sale, are entitled to priority of payment in the distribution of the proceeds of sale from the foreclosure of but one parcel of the realty. It has been seen that this theory was correct until chapter 518 of the Acts of 1892 (Code, art. 81, sec. 74) in terms, and as construed in *Parlett v. Dugan, supra,* repealed the existing law and re-enacted it so as to limit the scope of this most effective provision only to those taxes due and in arrear on account of the assessment on the particular piece of property of the taxpayer being sold by a ministerial officer. However, the two decisions relied upon are not in conflict with the last cited case, nor with the construction set forth in this opinion.

In *Union Trust Company v. Belvedere Co., supra,* the right of the mortgagee to foreclose was the question. This court there decided that taxes assessed and levied upon the shares of the capital stock of a corporation are a lien upon the real property of the corporation by force of the statute, although the tax is upon the property of its stockholders and the corporation is its collector; and, therefore, the mortgagee was entitled to foreclose, because, in the failure of the mortgagor to pay these taxes for a space of nine months, it had breached its covenant not to suffer or allow any lawful tax or charge to fall in arrear or any lien to be obtained on the property whereby the security of the mortgage might be impaired. pp. 524, 525. The point involved in the pending case was not considered.

Nor does *American Casualty Insurance Company's Case, supra,* give any countenance to appellant's contention. The casualty insurance company was insolvent and its assets were in course of conversion and distribution in equity for the benefit of its creditors. A tax had been levied by the City of Baltimore upon the shares of stock of the company held by residents and nonresidents, and the taxes were due and in arrear. Although the tax was upon the stock of the share-

holders, the statute made it chargeable to and payable by the corporation; and it was a lien upon the stock and the real property of the corporation. *Union Trust Co. v. Belvedere Co., supra.* The statute in force at the time provided that the stock should be valued at its actual cash value, and in no case should its aggregate valuation for the purpose of assessment against nonresident owners be less than the full value of the real estate and personalty of the corporation within the State of Maryland; but, inasmuch as the real property of the corporation within the state was valued and assessed to the corporation for the purpose of taxation in the same manner as against individual owners of similar property, the resident shareholders were assessed with the difference between the aggregate value of all the shares and the value of the realty. Code of 1888, art. 81, secs. 138, 141. As a result of subsequent amendment of the law, the practice now is to determine the value of the stock for the purpose of assessment against both resident and nonresident stockholders in a manner similar to that formerly provided for the ascertainment of the value with respect to the shares owned by residents of the state. See Code, art. 81, secs. 94, 154, 163, 166, 166a. This later legislation removed the discrimination which formerly existed between the valuation of the shares of resident and nonresident owners of corporate stock. Since the assets in the instance of the casualty insurance company were in the form of personalty, consisting of certain securities which had been deposited with the Treasurer of Maryland "as a guarantee for the payment of the policies of insurance issued by the company," and of furniture and other stocks, bonds and securities, the valuation and assessment of its shares of stock were not subject to any deduction on account of real estate and, therefore, represented the actual value of the aggregate corporate assets. Pages 549, 550, 558, 559. *Parlett v. Dugan,* 85 Md. 412. Consequently, in the conversion of the securities deposited with the Treasurer of Maryland, which constituted a special or trust fund applicable to a particular purpose, and of the other personalty, which gave rise to a general fund which was available for the pay-

ment of all claims against the insolvent corporation, the receivers acted with the common object of winding up the corporate affairs and their sale was by a ministerial officer of all the remaining particular property upon which the tax on the shares of stock was based. Code of 1888, art. 81, secs. 138, 141. It necessarily follows that both the special and general funds in court for distribution were subject to the prior payment of the taxes upon the corporate stock within the meaning of the Act of 1892, ch. 518. In speaking to this very point, our predecessors said, through Chief Judge McSherry: "These taxes were consequently due when the company's assets passed into the hands of the receivers; and being then due, the Act of 1892, ch. 518, directs that they shall be paid and satisfied by the officer or person selling under judicial process the property, real or personal, upon which such taxes are payable. As these taxes were due and payable when the company became insolvent, they are, in our opinion, a prior lien (sic) upon the assets in the hands of the receivers and must be paid out of the general fund, and if that should be insufficient the balance must be paid out of the special fund." This quasi lien or, more accurately, the right to a preference or priority in payment, existed under the Act of 1892, ch. 518, against both funds, since they were both the proceeds of the particular property upon which as a unit for taxation the valuation and assessment of the stock had been made; but, upon equitable principles, resort was first directed to the general fund and, that failing, then to the special fund. There is no doubt that *American Casualty Insurance Company's Case, supra,* supports the conclusion stated in this opinion; and it remains to apply the law as here construed to the facts on this record.

The late Judge Robert R. Henderson sold to Lawrence R. Shaffer certain improved real estate upon Pershing Street in Cumberland, Maryland; and, on March 26th, 1921, conveyed the property to the vendee and received a purchase money mortgage therefor. The vendee carried on a retail paint business, and, becoming financially involved, made a deed of trust for the benefit of his creditors on October 24th,

1927. Afterwards the appellee as assignee of the mortgage foreclosed the mortgage. The state and county taxes for the years 1924, 1925 and 1926, upon the real estate sold and other real estate and personal property of the mortgagor, were filed for payment in the foreclosure proceedings by the appellant as tax collector. All these taxes were due and in arrear, but the chancellor directed that only the taxes payable on account of the assessment on the particular real estate sold should be paid, and rejected the appellant's claim for taxes levied upon other real and personal property of the mortgagor, although due and in arrear. After the payment of the costs and expenses of foreclosure and the amount of taxes payable on the land sold, the purchase money failed to pay the mortgage indebtedness by a large amount. The personal property of the taxpayer in the hands of his assignee for the benefit of his creditors was insufficient to pay the taxes due either on account of the other real estate or the personalty of the taxpayer. Notwithstanding this circumstance, section 74 of article 81 of the Code applied, and controlled; and the chancellor was clearly right in refusing to allow the ministerial officer making the sale to pay any taxes not becoming due and in arrear on account of the levy upon the particular piece of real property foreclosed. *Supra.*

*Decree affirmed, with costs.*